**In the Matter of W.H., a deprived child.**

**Thomas HUBBARD, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. 82519.**

Court of Appeals of Oklahoma, Division No. 3.

March 8, 1994.

Sandra White LaVenue, Enid, for appellant.

Michael S. Gahan, El Reno, for appellee.

## *OPINION*

GARRETT, Vice Chief Judge:

Thomas Hubbard (Appellant) appeals the order of the trial court terminating his parental rights to his minor child, W.H. The parental rights of W.H.'s mother, Lisa Rawlins (Rawlins), were also terminated in the order, but she is not a party to this appeal.

A recitation of the facts is necessary. Rawlins gave birth to a daughter (O.R.) in May, 1990, in Lawton, Oklahoma. Appellant is not O.R.'s father. O.R. was removed from Rawlins' custody by the Department of Human Services (DHS) and was adjudicated deprived. Rawlins subsequently began living with Appellant, and on October 1, 1991, they had a child together, W.H., in Enid, Oklahoma. In August, 1992, O.R. was returned to Rawlins' custody, while they continued to live together. O.R. died eighteen days after being returned to Rawlins' home. The evidence shows she was the victim of the battered child syndrome, and her cause of death was a severe blow to the head 18 to 24 hours before her death. She also had multiple bruises, of varying ages, on the rest of her body. It is undisputed there were no bruises on her at the time she was returned to Rawlins' custody.

After O.R.'s death, DHS removed W.H. from the home and took her into its custody. The evidence as to W.H. showed that she was underweight and had an abnormal growth pattern, but there was no evidence that she had been physically abused. On March 24, 1993, W.H. was found to be a deprived child pursuant to 10 O.S.1991 § 1101(4). The court stated at the adjudication hearing for W.H.:

> I'm looking at Title 10, Section 1101, subparagraph 4 under the definition of a deprived child, specifically subparagraph (b) under that subsection. I think the evidence is overwhelming that the home that [W.H.] was in was unfit by reason of neglect or cruelty of both parents. Certainly that's been shown as to [O.R.] overwhelmingly, and I have concerns for [W.H.] as well.
>
> I'm going to find that [W.H.] is a deprived child, and the evidence, again, is overwhelming that one or both parents have either physically or sexually abused the child or have failed to protect the child from that abuse, that being [O.R.]. So I am going to find that [W.H.] is a deprived child. I'll continue the temporary custody order that's in place.

Rawlins was convicted of first degree murder and was sentenced to life in prison without parole. Appellant was never charged with a crime in connection with the death of O.R.

Appellant's parental rights were terminated under 10 Supp.1993 § 1130(A)(5)(a). The first impression issue in this case is the construction of this statute and its requirements as it relates to a sibling of the child under consideration in the termination proceeding. It provides:

> A. The finding that a child is delinquent, in need of supervision or deprived shall not deprive the parents of the child of their parental rights, but a court may terminate the rights of a parent to a child in the following situations:
>
> . . . . .
>
> 5. A conviction in a criminal action . . . or a finding in a deprived child action either that:

> a. the parent has physically or sexually abused the child or a sibling of such child or failed to protect the child *or a sibling of such child* from physical or sexual abuse that is heinous or shocking to the court or that the child or sibling of such child has suffered severe harm or injury as a result of such physical or sexual abuse. . . . (Emphasis added).

Appellant contends that § 1130(A)(5)(a) is inapplicable to the facts of this case because he is not the father or "parent" of both the injured child [O.R.] and the sibling [W.H.]. He argues also that the relationship under consideration in § 1130, for which termination can be sought, should be the parent-child relationship, not the relationship of a child to his or her siblings. He also argues that the legislature's use of the word "parent" intends that there must be an abuse of a parental relationship that is shocking or heinous. He further contends that a parent-child relationship is contemplated under the statute because, as in this case, an adult could have his parental rights terminated as to his child as a result of failing to protect another person's child [O.R.] to whom he had no legal duty, or right, to protect. We disagree.

In overruling Appellant's motion to dismiss the termination proceeding, the court stated:

> Our situation here does seem to be unique in that Mr. Hubbard was not the—or is not the father of the deceased child, the sibling of [W.H.]. I guess my concern is that if this—if the statute doesn't cover this situation, a parent in Mr. Hubbard's situation could allow any kind of abuse to take place to the—to a sibling of his child, and there would be no recourse against that person. I just don't think that's the intent of this statute. I think this was intended to cover this situation, so I'm going to overrule that motion.

Clearly, the court's analysis of the statute contemplates that the term "sibling" refers to O.R., W.H.'s sibling. We agree with this interpretation of the statute because the child at issue in the termination proceeding is W.H. The court correctly analyzed the plain and clearly expressed language of the statute, i.e., "a sibling of such child", and deter-

mined it meant that and nothing more. See *Oglesby v. Liberty Mut. Ins. Co.*, 832 P.2d 834 (Okl.1992). The court did not read into the statute the language which the Legislature obviously intentionally omitted: "a sibling of such child who is also the natural child of the parent". We cannot assume the Legislature intended an interpretation which depends upon words not contained in the statute, or that it intended a meaning which would provide protection for some, but not all, children within a household. Clearly, the statute creates a duty to protect the siblings of a child, as well as the child, living within the home. The Legislature apparently intended to address just such a situation as the one before us in this appeal. It did not include language requiring a parent-child relationship between an adult of the home and the sibling of the adult's child, and we will not read such a requirement into the statute.

The evidence supports the court's order terminating Appellant's parental rights as to W.H.

AFFIRMED.

HUNTER, P.J., and BAILEY, J., concur.